IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PUERTO RICO TELEPHONE COMPANY
INC.,

      Plaintiff

      v.

TELECOMMUNICATIONS REGULATORY
BOARD OF PUERTO RICO, et al.,

      Defendants

CIVIL NO. 09-1317 (JP)

## <u>OPINION AND ORDER</u>

Before the Court are: (1) Plaintiff Puerto Rico Telephone Company's ("PRT") motion for summary judgment **(No. 29)** as to its complaint, and the counterclaim and cross-claim filed by Defendant SprintCom, Inc. ("Sprint"); (2) Defendants Miguel Reyes-Dávila, Vicente Aguirre-Iturrino, Nixyvette Santini-Hernández, and Telecommunications Regulatory Board of Puerto Rico's (collectively known as the "Board") motion for summary judgment **(No. 30)** as to Plaintiff's complaint and Defendant Sprint's cross-claim; (3) Defendant Sprint's motion for summary judgment **(No. 32)** as to Plaintiff's complaint, its counterclaim against Plaintiff, and its cross-claim against Defendant Board; and (4) the oppositions thereto (Nos. 35, 36, and 37). This case arises from a Resolution and Order issued by the Board in which it: (1) ruled that Sprint was entitled to invoke the change-of-law provision in its expired contract with

CIVIL NO. 09-1317 (JP)          -2-

PRT and, thereby, obtain the retroactive benefits of the rate caps established by the Federal Communications Commission ("FCC") in 2001; (2) closed the case without determining the amounts that Sprint overpaid to PRT for reciprocal compensation and without ordering PRT to credit Sprint said amounts; and (3) dismissed Sprint's claims that PRT had been over billing Sprint for transit traffic from December 2002 to July 2005.  For the reasons stated herein, PRT's motion for summary judgment is hereby **GRANTED IN PART AND DENIED IN PART**, Sprint's motion for summary judgment is hereby **GRANTED IN PART AND DENIED IN PART**, and the Board's motion for summary judgment is hereby **GRANTED IN PART AND DENIED IN PART.**

I.   **MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE**

The following material facts were deemed uncontested by all parties hereto in their Joint Statement of Undisputed Facts (No. 28).

1.   PRT is a Puerto Rico corporation with its principal place of business located at 1515 Roosevelt Avenue, Guaynabo, Puerto Rico 00968.  PRT is a telecommunications carrier and incumbent local exchange carrier ("ILEC") under the jurisdiction of the Board and the FCC that provides local exchange, exchange access, and intra-island long distance services in Puerto Rico.

2.   Sprint is a corporation organized and existing under the laws of the State of Kansas and authorized to do business

CIVIL NO. 09-1317 (JP)          -3-

in Puerto Rico.  Sprint is a "communications common carrier" and a telecommunications carrier providing "commercial mobile services," "commercial mobile radio services," "personal communications services," and "personal wireless services" as those terms are defined and commonly used in the Communications Act of 1934, the Federal Telecommunications Act, and the FCC rules, regulations, and orders promulgated pursuant thereto. Sprint operates a nationwide wireless network across the United States and its principal place of business in Puerto Rico is located at 304 Ponce de León Ave., 8th Floor, Hato Rey, Puerto Rico 00918.

3.   The Board is a "State Commission" under the Telecommunications Act.

4.   PRT and Sprint entered into a negotiated interconnection agreement, which the Board approved, which had an effective date of June 26, 2000 ("ICA").

5.   Pursuant to the ICA, PRT and Sprint agreed to interconnect the two companies' networks and to provide services to each other, pursuant to the terms and conditions negotiated and included therein.

6.   The ICA had a one-year initial term, ending June 25, 2001.

7.   Section I.E. of the ICA states that "[t]he parties agree that if (1) a regulatory agency or court having

CIVIL NO. 09-1317 (JP)          -4-

jurisdiction finds that the terms of this agreement are inconsistent in one or more material respects with applicable federal or state law or any of its respective decisions, rules or regulations, or (2) a regulatory agency or court having jurisdiction alters or preempts the effect of this Agreement, then in the event of the occurrence of (1) or (2), which occurrence is final and no longer subject to administrative or judicial review, the parties shall immediately commence good faith negotiations to conform this Agreement with any such decision, rule, regulation or preemption.  The revised agreement shall have an effective date that coincides with the effective date of the original federal or state action giving rise to such negotiations.  The parties agree that except as provided herein the rates, terms and conditions of any new agreement shall not be applied retroactively to any period prior to such effective date."

8.   Section XIII.D. of the ICA states in pertinent part that "Sprint PCS may withhold payment of any reasonably disputed amount pending the outcome of the dispute resolution process set forth in Section XIX of this Agreement."

9.   Section III.A.2 of the ICA states that "[u]ntil the FCC establishes a means of determining the amount of

CIVIL NO. 09-1317 (JP)          -5-

intercarrier   compensation   for   ISP-bound   traffic, compensation  for  such  traffic  shall  be  based  upon  a division of revenues as follows: compensation for traffic delivered to an ISP shall be paid by the carrier whose customer originates the call in the amount of 50% of the amount billed by the originating carrier.   Any amount billed by the terminating carrier to the ISP for delivery of such traffic shall be credited against such payments by the originating carrier and the net amount remaining shall be paid by the originating carrier."

10.  Section III.B.4 of the ICA states that "Sprint PCS will compensate PRTC for terminating local traffic which is delivered at the meet point for termination on PRTC's network   or   other   networks   in   accordance   with Paragraph III.A, above.  PRTC will compensate Sprint PCS for terminating local traffic which is delivered at the meet point for termination on Sprint PCS's networks in accordance with Paragraph III.A. above.  Neither party shall impose any charges on the other for delivery of local originating traffic to the meet point.   This paragraph shall not affect the application of all ordinary rates or charges for facilities where one party delivers such originating traffic to the meet point by leasing facilities from the other party."

CIVIL NO. 09-1317 (JP)          -6-

11.  Appendix A (Price Schedule) of the ICA established the following rates for the following network elements: (a) transport facility per minute/mile – $0.000087; (b) transport termination per minute – $0.002056; (c) tandem switching per minute – $0.001600; and (d) local switching per minute – $0.007485.  These four rates result in a composite rate of approximately $0.011 per minute for reciprocal compensation traffic.

12.  Section XIII.A. of the ICA states that "[e]ach party is responsible for payment of all charges for completed calls, services, and equipment chargeable to that party under the terms thereof.  If objection in writing is not received by the billing party within thirty (30) days after a bill is mailed, the account shall be deemed correct and binding upon the billed party."

13.  Section XVII of the ICA states that "[a] failure or delay of either Party to enforce a provision of this Agreement, to exercise any option that is herein provided, or to require the performance of any provision hereof, shall in no way be construed to be a waiver of such provision or option."

14.  PRT and Sprint agreed on multiple occasions to extend the term of the ICA beyond June 25, 2001; the Board approved each such extension.

CIVIL NO. 09-1317 (JP)          -7-

15.   The ICA terminated on August 8, 2007.

16.   Effective August 9, 2007, PRT and Sprint entered into a new, negotiated interconnection agreement ("2007 Agreement").

17.   The 2007 Agreement includes a reciprocal compensation rate of $0.0007 per minute.

18.   On April 27, 2001, the FCC released the *ISP Remand Order*.[1] That order had an effective date of June 14, 2001.

19.   In 2001, Sprint was aware that certain incumbent local telephone companies (operating in jurisdictions other than Puerto Rico) had sought to exchange local and ISP-bound traffic pursuant to the rate caps the FCC established in the *ISP Remand Order*.

20.   Those incumbent local telephone companies (operating in jurisdictions other than Puerto Rico), including other subsidiaries of PRT's then-parent Verizon Communications Inc., notified all competitors operating in their jurisdictions, by sending them letters, informing those competitors that the incumbents sought to exchange local and ISP-bound traffic pursuant to the rate caps the FCC

---

1.     Order on Remand and Report and Order, *Implementation of Local Competition Provisions in the Telecommunications Act of 1996; Intercarrier Compensation for ISP-Bound Traffic*, 16 FCC Rcd 9151 (2001) ("*ISP Remand Order*"), remanded, <u>WorldCom Inc. v. FCC</u>, 288 F.3d 429 (D.C. Cir. 2002).

CIVIL NO. 09-1317 (JP)            -8-

established in the *ISP Remand Order*.  PRT did not provide

such notification.

21. Effective July 19, 2002, PRT entered into a new

interconnection agreement with a competitor in Puerto Rico

known as Centennial; that new agreement contained the rate

caps the FCC established in the *ISP Remand Order* for

reciprocal compensation.

22. PRT did not inform Sprint that its interconnection

agreement with Centennial contained rates for reciprocal

compensation based on rate caps the FCC established in the

*ISP Remand Order*.

23. On December 9, 2003, during negotiations between PRT and

AT&T over an interconnection agreement, an employee of

AT&T wrote to an employee of PRT that "I am disappointed

that the rates for reciprocal compensation you have

provided are not the ISP rates.  You are required to offer

them to all carriers once you offer them to one; i.e.,

Centennial.  I would appreciate a written response by

tomorrow morning by your legal team answering why I am

being discriminated against.  My letter that was signed by

Mr. Slater had a condition in it that we would be given

the ISP rates.  Please have folks respond before we talk

tomorrow."

CIVIL NO. 09-1317 (JP)          -9-

24. In 2004, PRT amended its interconnection agreement with
    AT&T Wireless, effective June 2003, to contain rates for
    reciprocal compensation based on rate caps the FCC
    established in the *ISP Remand Order*.  PRT did not inform
    Sprint of that fact.

25. On December 7, 2004, a PRT outside attorney wrote to PRT
    employees and PRT in-house counsel (in an e-mail chain
    that was later forwarded to a PRT outside consultant)
    that: "The only rate that would be used for reciprocal
    compensation would be $0.0007.  There would also be a rate
    for transit traffic.  In the past we have used the tandem
    switching rate for the transit traffic rate but based on
    recent conversations and our research we believe that we
    could justify including additional elements in the rate.
    As for the 'dance' and the options available to us we have
    looked at the small amount of precedent on the subject and
    we have determined that the FCC appears to intend that the
    ILEC's option be exercised on a state-wide basis, not on
    a carrier-by-carrier basis.  This is not totally free from
    doubt but it is the best reading of the limited authority
    on the subject.  Under this view, having opted for the
    $0.0007 rate with Centennial [PRT] would then have to
    offer the same rate to other carriers.  Of course another
    carrier could always agree to a different rate but it

CIVIL NO. 09-1317 (JP)          -10-

appears that such a carrier would be entitled to the capped rate if the carrier demanded it. Whether the carrier would do this would depend on the traffic balance between the carriers."

26.   It was not until August 2005 that Sprint became aware that PRT had entered into an agreement with another competitor in Puerto Rico containing rates for reciprocal compensation based on rate caps the FCC established in the *ISP Remand Order*.

27.   Prior to August 2005, Sprint did not review PRT's publicly filed interconnection agreements with other competitors in Puerto Rico, to determine whether PRT was an incumbent that had entered into an agreement with another competitor in Puerto Rico containing rates for reciprocal compensation based on rate caps the FCC established in the *ISP Remand Order* or asked PRT whether it had entered into such agreements.

28.   Sprint first informed PRT of Sprint's view that the *ISP Remand Order* triggered the change-of-law provision in the ICA, Section I.E, in August 2005.  Sprint requested that PRT amend the existing ICA and that such amendment be effective as of the date PRT first implemented the FCC rate caps with any other carrier.

CIVIL NO. 09-1317 (JP)            -11-

29.  Sprint first sought to negotiate a new interconnection
     agreement with PRT to replace the ICA in August 2005.

30.  PRT and Sprint stipulated on multiple occasions to a later
     starting date for their negotiations for a new agreement,
     ultimately stipulating to a start date of January 4, 2007.

31.  On July 6, 2006, Sprint sent a letter to PRT that stating
     that it "will compensate PRTC at the FCC rate of $0.0007
     and we will dispute any amounts charged for terminating
     reciprocal compensation traffic over that rate. We also
     hereby dispute and seek credit for an estimated $16.4 M
     for the excess charges and interest from June 2003 through
     May 31, 2006."

32.  On March 21, 2007, PRT sent a letter to Sprint stating
     that "Sprint unilaterally paid PRT charges for reciprocal
     compensation, transit traffic and reverse toll billing
     applying the FCC ISP-bound traffic capped rates of
     $0.0007.  The adjustment amounted to $766,289.25."

33.  Through August 8, 2007, Sprint's and PRT's reciprocal
     compensation invoices sought payment using all of the
     rates set forth in the ICA's Price Schedule that,
     together, result in a composite reciprocal compensation
     rate of approximately $0.011 per minute.

34.  On May 10, 2007, PRT informed Sprint that, unless Sprint
     paid the amount it had withheld, PRT would terminate

CIVIL NO. 09-1317 (JP)          -12-

services to Sprint under the ICA. This would have significantly affected Sprint's business, would have been very disruptive to customers and to callers trying to reach a Sprint customer.

35. Sprint filed a complaint with the Board on May 21, 2007, seeking to enjoin PRT from terminating services and for a ruling that the *ISP Remand Order* triggered the change-of-law provision in the ICA, Section I.E, entitling Sprint to the application of the FCC's rate caps retroactive to the date PRT began exchanging traffic with another competitor in Puerto Rico pursuant to the rate caps.

36. The Board enjoined PRT from terminating service during the pendency of the dispute.

37. PRT filed a counterclaim seeking payment for reciprocal compensation at the rates set forth in the Price Schedule of the ICA.

38. On January 22, 2008, while discovery was ongoing, Sprint filed a motion for leave to amend its complaint to add a count seeking recoupment of amounts paid to PRT for transit traffic between December 2002 and July 2005. The Board granted that motion.

39. Transit traffic occurs when a call is originated by a Sprint customer, routed (or "transited") through PRT's

CIVIL NO. 09-1317 (JP)            -13-

network, and delivered to a third-party carrier, which is
the carrier that provides service to the person Sprint's
customer called.  Such calls transit PRT's network either
because Sprint lacks a direct connection with the network
of the third-party carrier (both Sprint and the
third-party carrier, however, are directly connected to
PRT's network), or because the direct connection between
Sprint's network and the third-party carrier's network is
full (in which case, the connection through PRT's network
serves as an "overflow" route).

40. Sprint did not object in writing or otherwise to PRT's
invoices for transit traffic carried between December 2002
and July 2005 within 30 days after PRT mailed those
invoices.  Instead, Sprint first disputed PRT's transit
traffic billing for that time period in December 2007.

41. Sprint filed its claim alleging PRT's overbilling and
Sprint's overpayment for transit traffic after receiving
data PRT provided to Sprint during settlement discussions.

42. Between December 2002 and July 2005, PRT billed Sprint for
all the network elements included in the ICA's Price
Schedule for Transfer and Termination/Unbundled Switch
Usage when billing for transit traffic.  In other words,
PRT billed Sprint the rate for: (a) transport facility;
(b) transport termination; (c) tandem switching; and

CIVIL NO. 09-1317 (JP)            -14-

       (d) local switching, for every minute of use ("MOU") of transit traffic.

43. In July 2005, PRT implemented a new billing system for transit traffic; upon implementation of that system and until the expiration of the ICA in August 2007, PRT applied only the rate for tandem switching included in Section I.A of the Price Schedule to the ICA for every MOU in billing Sprint for transit traffic.

44. PRT's new billing system distinctly identified PRT's charges for Sprint's transit traffic.

45. Sprint was aware that it was sending transit traffic to PRT for delivery to other carriers from December 2002 through July 2005.

46. Sprint was aware that it was obligated to compensate PRT for the delivery of transit traffic to other carriers.

47. Sprint contended that it could not have discovered PRT's alleged over billing for transit traffic from the invoices PRT provided prior to the change of billing systems in July 2005.

48. The Board issued a scheduling order and managed the discovery process: oversaw the parties' exchange of three rounds of document requests and interrogatories; ruled on objections to discovery; ensured that the parties were engaging in good-faith negotiations; set a deposition

CIVIL NO. 09-1317 (JP)          -15-

       schedule that ultimately included eight depositions; and ruled on procedural motions.

49. On July 2, 2008, the Board directed the parties to file cross-motions for summary judgment.

50. On February 19, 2009, the Board issued its ruling ("Resolution and Order") on the cross-motions for summary judgment and closed its administrative proceeding.

51. The Board granted Sprint's Motion for Summary Judgment in part, as to its claim for application of the *ISP Remand Order* retroactive to July 19, 2002, but dismissed the administrative proceeding without determining the amount PRT and Sprint had to reimburse and/or credit each other or ordering the parties to reimburse and/or credit the other such amounts. Instead, the Board ordered Sprint and PRT "to engage in a reconciliation of the reciprocal compensation charges billed to each other during this period." Resolution and Order at 8 n.32.

52. The Board dismissed Sprint's claims regarding transit traffic overbilling in their entirety.

53. On March 24, 2009, Sprint filed a motion for reconsideration with the Board. The Board did not rule on Sprint's motion and, therefore, effectively denied it.

CIVIL NO. 09-1317 (JP)          -16-

II.  **LEGAL STANDARD**

    The parties in this case have agreed (No. 22) that this case is "in the nature of an appeal from a closed administrative record[.]" As such, the Court's review of this case is confined to the administrative record and the legal arguments of the parties.  Even though the parties filed cross motions for summary judgment, the standard to be applied is that found in 47 U.S.C. § 252(e)(6) because this is a judicial review of state agency determination regarding an interconnection agreement.

    The Court of Appeal for the First Circuit has determined that in a judicial review of an agency determination issues of law are reviewed de novo.  Global Naps, Inc. v. Verizon New England, Inc., 396 F.3d 16, 23 (1st Cir. 2005).  On the other hand, factual determinations by the state agency are reviewed under an arbitrary and capricious standard.  See id. at 23 n.8.

    An agency determination is deemed arbitrary and capricious where the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Company, 463 U.S. 29, 43 (1983) (internal quotation marks omitted).  Normally, the agency's determination is arbitrary and capricious:

CIVIL NO. 09-1317 (JP)          -17-

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Id.

## III. **ANALYSIS**

In the instant case, PRT has presented a motion for summary judgment arguing that the Court should rule in its favor on its complaint and dismiss the counterclaims and cross claims brought by Sprint.  Sprint argues that the Court should grant its summary judgment motion, dismiss PRT's complaint, and rule in its favor on its cross claims and counterclaims.  Lastly, the Board requests that the Court grant its motion for summary judgment and dismiss Sprint's cross claims and counterclaims, and PRT's complaint.  The Court will now consider the parties' arguments in turn.

### A.   ISP Remand Order[2]

In its motion for summary judgment, PRT requests that the Court overturn the Board's decision allowing Sprint to: (1) invoke the change-of-law provision in the ICA; and (2) obtain the benefit of the FCC rate caps established in the ISP Remand Order ("ISP Remand rates") retrospectively, starting on July 19, 2002.  Specifically, PRT argues that the change-of-law provision in the ICA was not

---

2.   Because this is a legal issue, the Court will review the issue de novo.

CIVIL NO. 09-1317 (JP)            -18-

triggered by the ISP Remand Order and, as such, the ISP Remand rates did not apply until Sprint and PRT agreed to a new and renegotiated interconnection agreement in August 2007.

Paragraph 82 of the ISP Remand Order states that "[t]he interim compensation regime [] establish[ed] here applies as carriers re-negotiate expired or expiring interconnection agreements." Said paragraph also states that the interim compensation regime "does not alter existing contractual obligations, except to the extent that parties are entitled to invoke contractual change-of-law provisions." The ICA contains a change-of-law provision in Section I.E.  Said change-of-law provision states:

> [t]he parties agree that if (1) a regulatory agency or court having jurisdiction finds that the terms of this Agreement are inconsistent in one or more material respects with applicable federal or state law or any of its respective decisions, rules or regulations, or (2) a regulatory agency or court having jurisdiction alters or preempts the effect of this Agreement, then in the event of the occurrence of (1) or (2), which occurrence is final and no longer subject to administrative or judicial review, the parties shall immediately commence good faith negotiations to conform this Agreement with any such decision, rule, regulation or preemption.  The revised agreement shall have an effective date that coincides with the effective date of the original federal or state action giving rise to such negotiations.  The parties agree that except as provided herein the rates, terms and conditions of any new agreement shall not be applied retroactively to any period prior to such effective date.

In Paragraph 89 of the ISP Remand Order there is also a "mirroring" rule.  Said rules reads:

> It would be unwise as a policy matter, and patently unfair, to allow incumbent LECs to benefit from reduced

CIVIL NO. 09-1317 (JP)          -19-

intercarrier compensation rates for ISP-bound traffic, with respect to which they are net payors, while permitting them to exchange traffic at state reciprocal compensation rates, which are much higher than the caps we adopt here, when the traffic imbalance is reversed. Because we are concerned about the superior bargaining power of incumbent LECs, we will not allow them to "pick and choose" intercarrier compensation regimes, depending on the nature of the traffic exchanged with another carrier. The rate caps for ISP-bound traffic that we adopt here apply, therefore, *only* if an incumbent LEC offers to exchange all traffic subject to section 251(b)(5) at the same rate. Thus, if the applicable rate cap is $.0010/mou, the ILEC must offer to exchange section 251(b)(5) traffic at that same rate. Similarly, if an ILEC wishes to continue to exchange ISP-bound traffic on a bill and keep basis in a state that has ordered bill and keep, it must offer to exchange all section 251(b)(5) traffic on a bill and keep basis. For those incumbent LECs that choose *not* to offer to exchange section 251(b)(5) traffic subject to the same rate caps we adopt for ISP-bound traffic, we order them to exchange ISP-bound traffic at the state-approved or state-arbitrated reciprocal compensation rates reflected in their contracts. This "mirroring" rule ensures that incumbent LECs will pay the same rates for ISP-bound traffic that they receive for section 251(b)(5) traffic.

### 1.   *Board Interpretation*

In its Resolution and Order, the Board found that the ICA's change-of-law provision was triggered by the ISP Remand Order and PRT's decision to offer the ISP Remand rate to Centennial on July 19, 2002. To reach this conclusion, the Board looked at the ISP Remand Order provision in paragraph 82, which states that the ISP Remand Order applies to expired and expiring interconnection agreements and does not alter existing contractual obligations unless a change-of-law provision in an interconnection agreement is triggered. The Board found that the ISP Remand Order triggered option two (2)

CIVIL NO. 09-1317 (JP)          -20-

of the change-of-law provision from the time PRT adopted the ISP Remand rates with Centennial.  As such, the Board found that the ISP Remand rates should apply to the Sprint and PRT relationship as of the date, July 19, 2002, when PRT and Centennial signed their agreement adopting the ISP Remand rates.

Also, the Board relied on Section III.A.2. of the ICA for support on its conclusion.  Said Section states: "[u]ntil the FCC establishes a means of determining the amount of intercarrier compensation for ISP-bound traffic . . . ."  The Board relied on said language to conclude that the parties were anticipating the ISP Remand rates which could alter the ICA.

### 2.   *PRT Argument*

In its motion for summary judgment, PRT argues that the Board misinterpreted both the ICA and the ISP Remand Order.  Specifically, it argued that the Board erred in finding that: (1) the ISP Remand Order entitled Sprint to invoke the change-of-law provision in the ICA; and (2) the ISP Remand rates applied not only prospectively, from the day the amendment was signed by Sprint and PRT, but also retroactively from the point in time when Centennial and PRT adopted the ISP Remand rates.

PRT argues that the ISP Remand rates should not have been applied retroactively because the second option of the change-of-law provision was not triggered by the ISP Remand Order.  The change-of-law provision which requires the agency to alter or preempt

CIVIL NO. 09-1317 (JP)          -21-

the effect of the ICA was not triggered by the ISP Remand Order because it expressly states that it does not alter existing contractual obligations.

PRT also argues that the Board was incorrect in concluding that the second change-of-law option was met by the act of PRT to offer the ISP Remand rates to Centennial which in turn had the effect of triggering the "mirroring" rule in paragraph 89 of the ISP Remand Order.  The relevant part of the mirroring rule states that the ISP Remand rates apply "only if an incumbent offers to exchange all traffic . . . at the same rate."  PRT argues that the Board incorrectly ignored the other part of the "mirroring" rule which controls what an incumbent should do if it declines to use the ISP Remand rates.  From the dual aspect of the mirroring rule, PRT argues that the status of the ISP Remand rates as a change-of-law where not contingent on PRT making use of the ISP Remand rates.

### 3.   *Court's Interpretation*

After considering the arguments, the ISP Remand Order and the ICA, the Court agrees with the Board and concludes that Sprint was entitled to the ISP Remand rates from the July 19, 2002 date.  The Court notes that it agrees with PRT that paragraph 82 of the ISP Remand Order clearly states that it does not alter existing contractual obligations.  However, said language is limited by the rest of the sentence which states that the ISP Remand Order does

CIVIL NO. 09-1317 (JP)          -22-

change contractual obligations to the extent parties are entitled to invoke contractual change-of-law provisions.

Option two (2) of the ICA change-of-law provision states that in the event that "a regulatory agency or court having jurisdiction alters or preempts the effect of this Agreement," the parties shall begin "good faith negotiations to conform this Agreement with any such decision, rule, regulation or preemption" and the effective date of the revised agreement shall be the date of the original federal action giving rise to said negotiations.

The disputes here are: (1) whether there has been an act by the FCC which alters the effect of the ICA; and (2) if there is such an act, what is date of the original federal action giving rise to said negotiations.

### i.   Act which Alters the ICA

PRT argues that no such act occurred by virtue of the ISP Remand Order because the change-of-law provision in the ICA is not automatically triggered by ISP Remand Order. Instead, the ISP Remand Order became effective after a voluntary action by PRT and, as such, it cannot be classified as an agency act.

The Court disagrees with PRT because the second option of the change-of-law provision was triggered. The Court finds that the distinction PRT attempts to draw is unconvincing. In the instant case, the FCC passed the ISP Remand Order which required, in its "mirroring" rule at paragraph 89, that once PRT offered the ISP

CIVIL NO. 09-1317 (JP)          -23-

Remand rates to a carrier in Puerto Rico, then PRT had to provide Sprint with the ISP Remand rates. When PRT chose to provide Centennial with the ISP Remand rates, the ISP Remand Order became effective and PRT was required, under the ISP Remand Order, to provide those rates to Sprint and the other carriers.  As such, the ICA was altered because PRT had to provide the ISP Remand rates and not the rates agreed to in the ICA.

     The Court agrees with PRT in that the change-of-law provision requires that there be an agency act.  However, unlike the narrow interpretation provided by PRT, the Court finds that an agency act includes an Order by the agency, such as the ISP Remand Order, which does not automatically take effect.  Also, the fact that the Order does not become effective unless a party chooses to take an action, such as PRT did when it extended the ISP Remand rates to Centennial, does not change the fact that the Order is an agency action.  PRT has provided no authority which would lead to the conclusion that an agency is not free to determine the time and manner in which its orders become effective.  Accordingly, the Court finds that the second option of the choice-of-law provision has been triggered by ISP Remand Order.

                    ii.  Date of Original Action

     When one of the two options in the choice-of-law provisions found in Section I.E. is met, said Section requires that the parties commence negotiations to conform the ICA to the rule or regulation

CIVIL NO. 09-1317 (JP)          -24-

which altered the ICA.  Moreover, said Section requires that the effective date of the revised agreement shall coincide with the effective date of the original federal action giving rise to the negotiations.

In the instant case, the ISP Remand Order is the federal action giving rise to the negotiations to conform the ICA rates with ISP Remand rates.  As explained above, said Order became effective when PRT offered Centennial the ISP Remand rates on July 19, 2002.  As such, the agreement between Sprint and PRT to apply the ISP Remand rates shall have the effective date of July 19, 2002.  Accordingly, the Court hereby **DENIES** PRT's motion for summary judgment on the ISP Remand Order issue, and **GRANTS** Sprint's motion for summary judgment and the Board's motion for summary judgment on the ISP Remand Order issue.

### B.   Board's Decision to Close Proceedings Without Determining the Amount to be Reimbursed

In its Resolution and Order, the Board determined that PRT should have charged Sprint the ISP Remand rates for reciprocal compensation from the moment PRT offered the ISP Remand rates to Centennial.  However, the Board did not: (1) determine the amounts that PRT over billed Sprint; and (2) order PRT to reimburse the corresponding amount to Sprint.

As such, Sprint argues that the Board decision cannot be considered final under the Puerto Rico Administrative Procedures Act

CIVIL NO. 09-1317 (JP)          -25-

("LPAU"), P.R. Laws Ann. tit. 3, § 2101 *et seq.*, because the Resolution and Order did not completely resolve Sprint's ISP Remand Order claims.

LPAU and the Puerto Rico Telecommunications Act, Law 213 of September 12, 1996 ("PRTA"), P.R. Laws Ann. tit. 27, § 267, provide the Board with authority to hold adjudicative proceedings in order to resolve controversies between two parties. Article 3.14 of the LPAU states that an adjudicative proceeding before an agency will end with the issuance of a final resolution. LPAU does not provide a definition for what is a "final resolution." Junta Examinadora de Tecnólogos Médicos v. Anneris Elías, 144 D.P.R. 483, 489 (1997). However, the Puerto Rico Supreme Court has stated that a final resolution must solve all the controversies and must not leave any controversy pending to be decided later. Id. at 490.

Section 8.16 of the Board's General Practice and Procedure Regulation, Regulation 5664 of August 5, 1997, states that the Board may issue final decision in adjudicative proceedings through summary disposition. Section 8.16(d) states that if the Board can only adjudicate some of the controversies in the case, then it must issue a partial decision and schedule a hearing to discuss the pending controversies.

The Board argues that it decided the issue of compensation by ordering Sprint and PRT to "engage in a reconciliation of the reciprocal compensation charges billed to each other during this

CIVIL NO. 09-1317 (JP)          -26-

period." PRT also argues that the Board is not required to hold a hearing because there is no material factual dispute when Sprint and PRT can perform simple math and agree on the amount payable from one to the other.  Lastly, PRT argues that the Board lacks jurisdiction to award damages in a breach of contract claim such as the one Sprint filed before the Board.  See Caribe Communications, Inc. v. Puerto Rico Telephone Company, 157 D.P.R. 203 (2002).

After considering the arguments, the Court determines that the Board has not issued a final order because it has not determined the amount over billed by PRT and ordered PRT to reimburse the money to Sprint.  The Board's decision to order the parties to engage in reconciliation leaves the controversy of how much money PRT over billed Sprint for reciprocal compensation undecided.  As explained by the Puerto Rico Supreme Court, for a resolution to be final it must not leave any controversy pending to be decided later.  Junta Examinadora de Tecnólogos Médicos, 144 D.P.R. at 490.  That is exactly what the Board has done here and, as such, the Board's decision is not final.  Accordingly, the Board is ordered to resolve the dispute as to how much money was over billed by PRT.

The Court also finds that the Board has the authority to order PRT to reimburse Sprint for the over billing.  PRT argues that the Board lacks jurisdiction to issue an order requiring PRT to reimburse Sprint for the amount over billed by PRT based on Puerto Rico Supreme Court decision in Caribe Communications, Inc. v. Puerto Rico

CIVIL NO. 09-1317 (JP)          -27-

Telephone Company, 157 D.P.R. 203 (2002).  In Caribe Communications, the Court decided that the Board cannot award damages in tort cases. 157 D.P.R. at 228-29.  However, said case is inapplicable as this case does not involve a request for damages in a tort case.  Instead, it is an action for reimbursement on PRT's over billing.  Nothing in said case suggests that its holding applies to actions such as this one.  As such, the Court concludes that the Board has the authority to order PRT to reimburse Sprint for the over billing.  Accordingly, the Court **GRANTS** Sprint's motion for summary judgment on this issue and **DENIES** the Board's and PRT's motions for summary judgment on this issue.

### C.    Transit Traffic Invoices

In its motion for summary judgment, Sprint requests that the Court overturn the Board's ruling that Sprint waived its right to dispute PRT's invoices for transit traffic between December 2002 and July 2005.  Specifically, Sprint argues that: (1) the Board erroneously concluded that Sprint agreed to a specific price for transit traffic; (2) the Board ignored Sprint's arguments that the over billing led to the unjust enrichment of PRT and undue collection by PRT; (3) the Board erroneously concluded that Sprint could have identified PRT's over billing; and (4) the Board incorrectly concluded that Sprint waived its right to object to the over billing in the traffic transit invoices pursuant to the ICA.  The Board and PRT oppose said motion and argue that summary judgment should be

CIVIL NO. 09-1317 (JP)          -28-

granted dismissing the cross claim and counter claim related to the transit traffic invoices.  The Court will now consider the parties arguments.[3]

> **1.  *Did the Board erroneously conclude that Sprint could have identified PRT's over billing?*[4]**

In the Resolution and Order, the Board determined that Sprint could have been able to identify the over billing in the transit traffic invoices issued by PRT.

In its motion for summary judgment, Sprint argues that the Board arbitrarily and capriciously decided that Sprint could have known of the transit traffic invoice over billing because the Board did not consider substantial evidence that Sprint could not have identified said over billing.  Specifically, Sprint argues that the Board ignored evidence that Sprint could not have identified the over billing by engaging in a more thorough review of the invoices because PRT failed to identify its central offices using industry accepted Common Language Location Identifier ("CLLI") codes and included incorrect information regarding the central offices to which traffic

---

3.    The Court will focus its analysis on Sprint's arguments related whether Sprint could have identified the over billing and the Board's decision that Sprint waived its over billing claims pursuant to the ICA because these are the dispositive issues in the case. For purposes of solving these issues, the Court will assume without deciding that PRT over billed Sprint. Also, the Court notes that, even if the unjust enrichment and undue collection claims were dispositive issues in this case, they would be barred because the ICA governs the obligations regarding transit traffic payments.  See Sepúlveda Rivas v. Departamento de Salud, 145 D.P.R. 560, 565-66 (1998); Garriga, Hijo, Inc. v. Condominio Marbella del Caribe Oester y Otros, 143 D.P.R. 927, 934 (1997).

4.    Because this is a factual issue, the Court will examine the Board's decision under an arbitrary and capricious standard.

CIVIL NO. 09-1317 (JP)          -29-

was directed by identifying all central offices with PRT's operating company numbers ("OCNs"). As such, Sprint could not have identified transit traffic using the erroneous information included in the invoices.

Also, Sprint argues that the Board was incorrect in its statement that Sprint could have identified the transit traffic by reviewing the NPA-NXX numbers that were receiving transit from Sprint to determine if said NPA-NXX number belonged to a telecommunications company other than PRT. Sprint argues that it would have been unreasonable to expect Sprint to go through such a process.

After considering the arguments and evidence, the Court determines that the Board's decision that Sprint could have known of the over billing is not arbitrary and capricious. Sprint challenged the Board's decision that Sprint could have identified the over billing by auditing the invoices by the NPA-NXX numbers as arbitrary and capricious. In its own motion for summary judgment, Sprint states that it could have identified the transit traffic charges in PRT's invoices by using the NPA-NXX numbers. However, Sprint argues that said process would be burdensome. Regardless of whether said process would be burdensome, Sprint itself admitted that it could have identified the transit traffic charges. As such, the Court concludes that the Board's determination that Sprint could have identified the over billing by auditing the invoices with the NPA-NXX numbers is not arbitrary and capricious. Based on the decision that

CIVIL NO. 09-1317 (JP)           -30-

the Board was not arbitrary and capricious in its finding that Sprint

could have determined that PRT was over billing Sprint by reviewing

the NPA-NXX numbers, it is unnecessary to determine whether the Board

ignored evidence that Sprint could not have identified the over

billing by engaging in a more thorough review of the invoices because

PRT provided deficient CLLI codes and OCNs.[5]

### 2. *Did Sprint waive it's right to object to the over billing pursuant to the ICA?*[6]

In its Resolution and Order, the Board found that Sprint waived

its right to object to PRT's over billing for transit traffic because

Sprint did not object to said over billing within the 30 day period

established in Section XIII.A of the ICA.  In its motion for summary

judgment, Sprint argues that it did not waive its right to object to

said over billing under the terms of the ICA because: (1) the term

"chargeable" found in Article XIII.A of the ICA excludes the over

billing by PRT; and (2) because Article XIII.A of the ICA is not

clear and unambiguous when compared with Article XVII of the ICA.

### i.   Language in Article XIII.A of ICA

Sprint argues that the language in Article XIII.A which states

"[e]ach party is responsible for payment of all charges for completed

calls, services, and equipment chargeable to that party under the

---

5.    The Court notes that there is evidence in the record that the Board did consider the deficient codes. Page nine (9) of the Resolution and Order by the Board shows that it did consider evidence related to the deficient codes when the Board stated "[a]s to the deficiencies in the CLLI codes . . . ."

6.    Because this is a question of law, the Court will examine the ICA de novo.

CIVIL NO. 09-1317 (JP)          -31-

terms hereof[]" excludes the amounts billed in error by PRT. Specifically, Sprint believes that the use of the word "chargeable" excludes the over billing for transit traffic that occurred between December 2002 and July 2005 because the over billing included fees that were not "chargeable." As such, Sprint claims that the over billing would be excluded from the thirty day limitation.

     The Court is not convinced by this argument.  This clause is in the contract to deal with billing disputes and billing disputes would not arise unless one of the parties believes that an amount billed was not chargeable.  As such, the interpretation proposed by Sprint would render Article XIII.A meaningless.  The Court will not accept an interpretation that would render said Article meaningless. See e.g., In re Advanced Cellular Systems Inc., 483 F.3d 7, 12 (1st Cir. 2007).[7]  Accordingly, the Court rejects the interpretation proposed by Sprint.

                    ii.  Language in Article XVII of ICA

     Sprint also argues that the language in Article XIII.A cannot serve as a waiver of rights under Puerto Rico law because it is not clear and unequivocal when compared to the language in Article XVII of the ICA.

---

7.   Sprint also argues that, at the very least, the language should be read to improperly contradict a party's right to require that only "chargeable" amounts be invoiced. Sprint bases this interpretation on their argument that the amounts billed which are not chargeable could not be discovered. Since the Court has already determined that the over billing could have been found, the Court finds that this argument lacks merit.

CIVIL NO. 09-1317 (JP)          -32-

Article XVII of the ICA states:

XVII. No Waiver.

A failure or delay of either Party to enforce any
provision of this Agreement, to exercise any option that
it herein provided, or to require the performance of any
provision hereof shall in no way be construed to be a
waiver of such provision or option.

Under Article 4 of the Puerto Rico Civil Code, a party can waive
rights that it is entitled to.   P.R. Laws Ann. tit. 31, § 4.
However, the waiver must be clear and unequivocal.   <u>Chico v.
Editorial Ponce, Inc.</u>, 101 D.P.R. 759, 778 (1973).

After considering the arguments, the Court determines that the
language in Article XIII.A of the ICA is clear and unequivocal.
Article XIII.A clearly states that the section is applicable to
billing disputes such as this one in its heading which states
"XIII. Charges and Payment Obligations."  On the other hand, the
Article relied on by Sprint is nothing more than a general provision.
No reasonable person could read the contract and conclude that
Article XIII is not the section that deals with billing disputes.
As such, Sprint's reliance on the general provision in Article XVII
is misplaced, given that Article XIII.A provides the specific
guideline for waiver of billing disputes.  <u>Wells Real Estate Inv.
Trust II, Inc. v. Chardón/Hato Rey Partnership</u>, 643 F. Supp. 2d 182,
192 (D.P.R. 2009) (citing <u>Lawson v. FDIC</u>, 3 F.3d 11, 17
(1st Cir. 1993)).

CIVIL NO. 09-1317 (JP)          -33-

### iii. <u>Proper Interpretation of Article XIII.A</u>

Article XIII.A of the ICA reads:

XIII. Charges and Payment Obligations.

A.   Each party is responsible for payment of all charges for completed calls, services, and equipment chargeable to that party under the terms hereof.  If objection in writing is not received by the billing party within thirty (30) days after a bill is mailed, the account shall be deemed correct and binding upon the billed party.

Article 1233 of the Puerto Rico Civil Code determines the manner in which courts should interpret contracts in dispute as to the meaning of their terms.   P.R. Laws Ann. tit. 31, § 3471. Article 1233 is strict in its mandate that a court should enforce the literal sense of the written contract unless the words are somehow contrary to the intent of the parties.  <u>Hopgood v. Merrill Lynch, Pierce, Fenner & Smith</u>, 839 F. Supp. 98, 104 (D.P.R. 1993).  Once the terms  of a contract are sufficiently clear so that only meaning is possible, the Court cannot dwell on the alleged intent of the parties at the moment they entered into the contract.  <u>Id.</u>  A term is clear when it is sufficiently lucid to be understood to have particular meaning without room for doubt.  <u>Id.</u>

In the instant case, the Court finds that Article XIII.A is clear that a party waives the right to object to a billing issue once thirty days have elapsed from when the bill is mailed.  It is undisputed that the challenged invoices were for the period between December 2002 and June 2005.  Also, it is undisputed that Sprint did

CIVIL NO. 09-1317 (JP)              -34-

not raise an objection to the over billing until December 2007, more than thirty days after the bill was mailed.  Thus, under the clear mandate of Article XIII.A, the Court finds that Sprint waived its right to object to the over billing in the transit traffic invoices.

Accordingly, the Court **GRANTS** PRT's and the Board's motions for summary judgment on the traffic transit issue, and **DENIES** Sprint's motion for summary judgment on the traffic transit issue.

**IV.**   **CONCLUSION**

In conclusion, the Court **GRANTS** Sprint and the Board's motions for summary judgment on the ISP Remand Order issue and **DENIES** PRT's motion for summary judgment on the ISP Remand Order issue.  Also, the Court **GRANTS** Sprint's motion for summary judgment on the determination of the amount to be reimbursed issue and **DENIES** PRT and the Board's motion for summary judgment on amount to be reimbursed issue.  Lastly, the Court **GRANTS** PRT and the Board's motion for summary judgment on the transit traffic issue and **DENIES** Sprint's motion for summary judgment on the transit traffic issue.  The Court will enter a separate judgment accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of March, 2010.


                              s/Jaime Pieras, Jr.
                              JAIME PIERAS, JR.
                           U.S. SENIOR DISTRICT JUDGE